IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **AMBER CANTER,** | * |
| **Plaintiff,** | * |
| v. | * |
| **WARDEN ABELLO, *et al.*,** | *      **CIVIL NO. JKB-19-02395** |
| **Defendants.** | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM

Plaintiff Amber Canter brings this suit against three officers of the Maryland Department of Public Safety and Correctional Services ("DPSCS"): Sergeant Monyette Washington; Officer Uchenna Okeke; and Officer Zanel Santana. (*See generally* Sec. Am. Compl., ECF No. 50.)[1] Canter asserts various claims stemming from a use of force incident on June 14, 2019 at Baltimore City Central Booking & Intake Facility ("Central Booking"), where she was detained pending trial. (*See generally id.*)

Presently pending before the Court is Canter's Motion for Leave to File Third Amended Complaint ("Motion"). (Mot. Amend., ECF No. 63.) The Motion is ripe, and no hearing is required. *See* Local Rule 105.6 (D. Md. 2021). For the reasons set forth in this Memorandum, a separate Order shall issue granting Canter's Motion for Leave to File Third Amended Complaint.

---

[1] The Second Amended Complaint also names as defendants: the State of Maryland; Robert L. Green, the Secretary of DPSCS; Frederick T. Abello, the Warden of Baltimore City Central Booking & Intake Facility; and Security Chief Tyrell Wilson, a DPSCS Supervisor at Central Booking. (*See generally* Sec. Am. Compl.) However, as discussed *infra*, Canter voluntarily dismissed these defendants. (*See* ECF No. 55, 57.)

## I.     *Factual Background*[2]

Amber Canter, a transgender woman, was arrested in Baltimore City on or about February 14, 2019. (Sec. Am. Compl. ¶¶ 1, 22.) She was detained at Central Booking pending criminal trial in Baltimore City Courts. (*Id.* ¶ 22.) Canter states that during her term in pretrial detention, she "became notoriously known by Central Booking correctional officers and staff as a persistent advocate and activist for transgender inmate rights" due to her "consistent[] and vocal[]" challenges to the "policies and practices of the facility that she determined to be detrimental to the transgender inmate community." (*Id.* ¶ 23.) Throughout the Second Amended Complaint, Canter recounts instances of various officers using transphobic and homophobic slurs in their interactions with her. (*See, e.g., id.* ¶¶ 26, 29, 35, 59.)

Canter alleges that, on June 14, 2019, Central Booking staff informed her that she was to be transferred a different DPSCS facility. (*Id.* ¶ 24.) However, she states that Sergeant Jakmee Mobley informed her that "if she did not end up ultimately being transferred," she would be entitled to "'out-of-cell' recreational time before being locked back into her cell for that evening," and that Mobley relayed this instruction to Officer Glaudia Vincent. (*Id.* ¶¶ 25, 26.) According to Canter, Vincent responded that she would not comply and "this [slur] will not get nothing extra!" (*Id.* ¶ 26.) The transfer was attempted, but the Warden at the other facility rejected Canter's entrance upon her arrival, and she was transported back to Central Booking. (*Id.* ¶ 27.)[3]

Upon her return, Canter states that she asked Officer Uchenna Okeke to join other inmates in recreational time, as permitted by Mobley. (*Id.* ¶ 28.) However, Canter states that Vincent interjected, stating: "'I'm sick of your [slur] getting special privileges. Just like I told Mobley,

---

[2] The factual background provided is drawn from facts asserted in the Second Amended Complaint, unless otherwise stated.

[3] Sergeant Mobley and Officer Vincent were named as defendants in the Original Complaint (*see* ECF No. 1), but were not included as defendants in the First or Second Amended Complaints (*see* ECF Nos. 49, 50).

2

you're not getting no [ ] rec[reational time]." (Sec. Am. Compl. ¶ 29.) Vincent then "attempted to lock [Canter] into her cell for the evening." (*Id.* ¶ 30.) Canter refused and insisted that "she receive Sergeant Mobley's promise of recreational time prior to lockdown." (*Id.*) At this point, Vincent called for Officer Zanel Santana "to respond from a completely different tier of the detention center to assist [Officer Vincent] with the dispute with [Canter]." (*Id.* ¶ 31.) Canter asked another correctional officer, Officer Monyette Washington, to call Mobley or Warden Frederick Abello to come to address the issue. (*See id.* ¶ 32.) Canter proceeded to sit on the floor in a nearby sally port, refusing to move until a supervisor responded. (*Id.* ¶ 33.) Washington refused to contact Mobley or Abello. (*See id.* ¶ 34.)

Thereafter, Santana arrived on the scene, stood behind Canter, and shouted to Washington to "[m]ace this [slur]." (*Id.* ¶ 35.) Santana "then put on his tactical gloves and acted is if he was going to strike" Canter and began "pushing [her] back with his knee as she sat on the floor." (*Id.* ¶ 36.) Canter alleges that the DPSCS Coordinator of the Emergency Mental Health and Psychology Department, Susan Cozzolino, witnessed these events, but Santana cursed at her, telling her to "[m]ind [her] own business." (*Id.* ¶ 37.) Cozzolino subsequently "shook her head, waved her notebook at Defendant Santana, and quickly left the scene." (*Id.* ¶ 39.)

Santana "then bent down over [Canter] as she was still seated on the floor and wrapped his right arm around [her] neck tightly in a chokehold," while he "placed his left hand" on the back of her head "for additional leverage and torque, in an attempt to cause [Canter] as much pain as possible." (*Id.* ¶ 40.) Canter avers that this chokehold was at the time and continues to be "expressly forbidden according to DPSCS use of force training directives." (*Id.* ¶ 41.) Santana proceeded to lift Canter off the ground "while continuing to unlawfully choke her, and began to

3

push/carry her out of the sally port and into a common area" with the assistance of Okeke. (Sec. Am. Compl. ¶¶ 42, 43.)

Canter recounts that Santana choked her "so violently that she could not breathe," rendering her unconscious "within a matter of seconds." (*Id.* ¶ 44.) Despite her unconsciousness, Canter states that Santana "continued to choke" her as he carried "her limp body across the common room floor by her neck for several more feet," while Okeke provided support on Canter's right side. (*Id.* ¶¶ 45, 46.) Washington walked along her left side and "watched this unreasonable assault," but did not attempt to intervene. (*Id.* ¶ 47.) Canter alleges that at this point, "Santana intentionally dropped" her unconscious body and she fell from Santana's "waist-level down to the concrete floor directly onto her face." (*Id.* ¶ 48.) Thereafter, Santana and Okeke "grabbed [Canter] by her arms and her jumpsuit and dragged her across the rest of the common room floor and left her on the floor of her cell." (*Id.* ¶ 49.) Canter states that she "sustained a serious open head wound that was visibly bruised and swollen." (*Id.* ¶ 50.) The Second Amended Complaint includes images of this incident that appear to be taken from Central Booking surveillance footage. (*See id.* at pgs. 3, 12–13; *see also id.* ¶ 76 (stating that Mobley turned over to an internal investigator a copy of the surveillance footage capturing the incident).)

Canter states that none of the officers sought medical treatment for her until she regained consciousness ten minutes later, "in direct violation of DPSCS policy." (*Id.* ¶ 51.) After she awoke, Washington transported Canter to the Central Booking medical unit to receive treatment for her injuries, which the medical providers determined to be "very serious." (*Id.* ¶¶ 52, 53.) Canter was transferred to the Intensive Care Unit at Johns Hopkins Hospital, where she was diagnosed with "a fractured left orbital bone, a fracture to her left optic nerve canal, fractures to her left anterior skull base, multiple sinus fractures, severe bruising to her left forehead,

4

pneumocephalus (air pockets in the intracranial space created by blunt force trauma), and internal bleeding behind her left eye." (Sec. Am. Compl. ¶¶ 53, 54.) She remained at Johns Hopkins Hospital for approximately four days. (*Id.* ¶ 55.)

Upon her release, Canter was instructed to return to see an ear, nose, and throat specialist and a neurologist to determine if she required surgery for her injuries. (*Id.* ¶ 57.) However, Canter states that the staff at Central Booking refused to allow her to attend her medical appointments, which she alleges was retaliation for her complaints to a Johns Hopkins social worker about the assault. (*Id.* ¶¶ 56, 58.) She alleges that Mobley saw her upon her return and remarked, "I see your [slur] got what was coming to you!" (*Id.* ¶ 59.)

Thereafter, on June 17, 2019, Central Booking administrators issued Canter a "Notice of Infraction," stemming from the encounter with Vincent, Washington, Okeke, and Santana. (*Id.* ¶ 60.) She received a citation for: "1) disobeying an order, 2) being disrespectful, 3) engaging in a disruptive act, 4) and making threats." (*Id.*) Canter accepted a plea agreement, pursuant to which she pleaded guilty to disobeying an order and being disrespectful, in exchange for "the promise of a lenient punishment and dismissal of the two additional infractions." (*Id.* ¶ 61.) She states that she was sanctioned with fifteen days of segregation. (*Id.*)

On July 3, 2019, an Internal Investigation was opened into Canter's complaint of excessive force against Santana, Washington, and Okeke. (*Id.* ¶ 76.) Canter alleges Defendants "conspired together to falsify their use-of-force reports that memorialized" the encounter with Canter. (*Id.* ¶ 62.) She alleges that all three lied in their respective reports, with Washington and Okeke supporting Santana's statement that he grabbed Canter by her upper torso and that she "'dropped her legs and fell by throwing her body to the floor.'" (*Id.* ¶¶ 63–65.) Canter states that, as a result of this false information during the investigation of the incident, she has been "made vulnerable to

this very day to future harassment and abuse by other correction officers throughout the DPSCS system." (Sec. Am. Compl. ¶ 69.)

In addition, Canter alleges that, due to her complaint concerning "being victimized by" Santana, she has suffered and continues to suffer retaliation from various DPSCS officers "in the form of threats to her safety, refusing to receive any further grievances from [her], arbitrarily limiting the amount of grievance[s] [she] may file, adverse housing transfers, denial and/or delay of medical services, and/or encouraging other inmates to intimidate [her]." (*Id.* ¶ 70.) Canter also states that the incident has caused her to experience "severe physical and emotional pain and suffering," including "fear for her life, loss of sleep, anxiety, depression, and post-traumatic stress disorder." (*Id.* ¶ 75.)

On March 29, 2021, a Baltimore City Grand Jury criminally indicted Santana, Okeke, and Washington on charges related to their June 14, 2019 conduct. (*Id.* ¶ 78.) In the proposed Third Amended Complaint, Canter states that, on March 22, 2022, Santana was found guilty of Second Degree Assault and two counts of Misconduct in Office, and Washington and Okeke acquitted on all charges. (Proposed Third. Am. Compl. ¶ 68, ECF No. 63-1.) The proposed Third Amended Complaint also states that Santana was sentenced to three months of incarceration, which was served on home detention. (*Id.* ¶ 69.)

The Second Amended Complaint lodges seven claims against Santana, Washington, and Okeke, as follows: "14th Amendment Violations," pursuant to 42 U.S.C. § 1983, in their individual capacities (Count I); Conspiracy to Interfere with Civil Rights, pursuant to 42 U.S.C. § 1985, in their individual capacities (Count II); "Neglect to Prevent Interference with Civil Rights," pursuant to 42 U.S.C. § 1986, in their individual capacities (Count III); Violation of Articles 24 and 26 of the Maryland Declaration of Rights, in their individual and official capacities (Count IV);

6

Violation of Articles 16 and 26 of the Maryland Declaration of Rights, in their individual and official capacities (Count VI); Gross Negligence, in their individual and official capacities (Count VII); and Civil Conspiracy, in their individual and official capacities (Count VIII). (Sec. Am. Compl. ¶¶ 79–105; 113–32.) In addition, the Second Amended Complaint asserts two claims solely against Santana, in both his individual and official capacity, as follows: "Assault & Battery" (Count IX) and Intentional Infliction of Emotional Distress (Count XI). (*Id.* ¶¶ 133–37; 142–46.)[4]

The proposed Third Amended Complaint, discussed *infra*, removes Washington and Okeke as defendants on Count I and all claims asserted against Defendants in their official capacities, among other things. (*See generally* ECF No. 63-1.)

## II.   *Procedural History*[5]

Canter filed her Original Complaint *pro se* on August 14, 2019, which named as defendants Abello, Wilson, Mobley, Washington, Satana, Okeke, and Vincent. (ECF No. 1.) Abello, Mobley, Wilson, Vincent, and Okeke filed motions to dismiss for failure to state a claim. (ECF Nos. 27, 30.) Thereafter, on January 8, 2021, Canter filed a motion to dismiss the claims against these Defendants and asked the Court to find the remaining Defendants, Washington and Santana, in default for failure to respond to the Complaint. (ECF No. 32.) On April 30, 2021, Canter filed a Motion for Extension of Time to Amend the Complaint (ECF No. 41), which the Court granted (ECF No. 42).

On June 14, 2021, the Court dismissed Abello, Wilson, Mobley, Vincent, and Okeke without prejudice and denied their motions to dismiss as moot. (ECF No. 43.) The Court denied

---

[4] The Second Amended Complaint asserts two additional claims against the State of Maryland: Negligence (Count V) and "Respondeat Superior" (Count X). (*See* Sec. Am. Compl. ¶¶ 106–112; 138–141.) However, in light of Canter's voluntary dismissal of the State as a defendant in this matter, these claims were effectively dismissed. The Court also notes that the doctrine of respondeat superior "may not be asserted as a separate cause of action." *McDaniel v. Maryland*, Civ. No. RDB-10-00189, 2010 WL 3260007, at *12 (D. Md. Aug. 18, 2010).
[5] This matter was transferred to the undersigned on February 26, 2023.

Canter's request for entry of default as to Washington because, by that time, Washington had filed a Motion to Dismiss for failure to state a claim (ECF No. 36). (*See* ECF No. 43 at 2.) However, the Court granted the request for entry of default as to Santana. (*See id.*) The Clerk of Court entered default as to Santana on June 16, 2021. (ECF No. 44.)

Thereafter, Canter retained counsel and filed her First Amended Complaint on November 30, 2021. (ECF No. 49; *see* Mot. Amend at 1.) On December 2, 2021, Canter filed her Second Amended Complaint (ECF No. 50) to "correct certain clerical errors in the [First Amended Complaint]." (*See* Mot. Amend at 2.) The Second Amended Complaint re-added Abello, Wilson, and Okeke as defendants and named the State of Maryland and Secretary Green as defendants. (*See* ECF No. 50.) It also included Washington and Santana as defendants, but did not include Vincent or Mobley. (*See generally* ECF No. 50.)

Abello, Wilson, Green, and the State filed a Motion to Dismiss, or in the Alternative, for Summary Judgment on December 21, 2021. (ECF No. 52.) Canter filed a Consent Motion for Voluntary Dismissal as to all claims lodged against those defendants. (ECF No. 55.) On February 9, 2022, the Court denied as moot Washington's Motion to Dismiss (ECF No. 36), given Canter's Second Amended Complaint, and granted Canter's Motion for Voluntary Dismissal (ECF No. 55). (ECF Nos. 56, 57.)

Thereafter, on August 31, 2022, Canter filed the instant Motion for Leave to File Third Amended Complaint, attaching the proposed Third Amended Complaint. (Mot. Amend., ECF No. 63.) The proposed Third Amended Complaint asserts claims only against Santana, Washington, and Okeke. (*See generally id.*)

On March 15, 2023, Canter filed a status report, joined by Washington and Okeke, informing the Court that Santana has not obtained counsel for his defense and requesting that the

8

Court "issue notice to Defendant Santana to obtain counsel." (ECF No. 69.) As yet, the Court has not set a Scheduling Order in this case.

### III.   *Legal Standards*

Pursuant to Federal Rule of Civil Procedure 15(a)(1),

> [a] party may amend its pleading once as a matter of course within [ ] 21 days of serving it, or [ ] if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Leave should be given "freely" and "when justice so requires." *Id.* A court "may deny leave to amend for reasons 'such as undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc.'" *Glaser v. Enzo Biochem, Inc.*, 464 F.3d 474, 480 (4th Cir. 2006) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also Daulatzai v. Maryland*, — F. Supp. 3d —, Civ. No. JKB-21-0590, 2022 WL 2078284, at *4 (D. Md. June 9, 2022) (same).

### IV.   *Analysis*

The Motion seeks leave to amend in order to: (1) reflect the dismissal of several defendants named in the Second Amended Complaint and remove the allegations made against them; (2) "add new relevant factual information learned from the trial of the criminal case against Defendants as a result of the allegations in this instant matter"; (3) withdraw Count I as against Washington and Okeke; and (4) remove all claims against Defendants in their official capacities. (Mot. Amend at 1; *see generally* Proposed Third Am. Compl.) The Motion asserts that Washington and Okeke consent to the amendment, but that "Defendant Santana has declined to consent to this amendment

9

through his criminal defense counsel." (Mot. Amend at 1). As of the time of this writing, Santana has not entered an appearance in this case.

In the absence of any opposition to the Motion, the Court concludes that Canter has satisfied the requirements of Rule 15(a)(1). Defendant Santana has had substantial opportunity to respond to the Motion and to retain counsel to enter their appearance in the case, but has failed to do so. Additionally, the proposed amendments narrow the issues in this case and reflect procedural developments, which promote the judicial economy and facilitate the disposition of this case. The Court is unaware of any "undue delay, bad faith, or dilatory motive," and there has been no objection raised on the ground of prejudice. *See Glaser*, 464 F.3d at 480. Thus, the Court finds that granting leave to file the Third Amended Complaint comports with the principles of justice and fairness, as required by Rule 15(a)(2).

Accordingly, the Court shall grant the Motion.

V.   **Conclusion**

For the reasons stated above, a separate Order shall issue granting Canter's Motion for Leave to File Third Amended Complaint (ECF No. 63).

DATED this __13__ day of April, 2023.

BY THE COURT:

_/s/ James K. Bredar_
James K. Bredar
Chief Judge