**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **AMBER CANTER,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **CIVIL NO. JKB-19-2395** |
| **STATE OF MARYLAND, et al.,** | * | |
| **Defendants.** | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## MEMORANDUM

Plaintiff Amber Canter has filed a Motion for Default Judgment. (ECF No. 124.) In it, she seeks default judgment on Counts 1, 2, 6, and 9 of her Third Amended Complaint. (*Id.*) Plaintiff's Motion will be largely granted, and she will be directed to provide additional briefing.

### I.   Factual and Procedural History[1]

Plaintiff's Third Amended Complaint raises various allegations against three Defendants, all of whom were Correctional Officers at the Baltimore City Central Booking and Intake Center ("Central Booking") during the events that gave rise to Plaintiff's claims: Zanel Santana, Monyette Washington, and Uchenna Okeke. (*See generally* ECF No. 72.) Plaintiff's claims arise out of an "unlawful, unconstitutional, and brutal attack on Plaintiff Amber Canter . . . , a pretrial detainee transgender woman, which was committed under the watch of the Maryland Department of Public Safety and Correctional Services ('DPSCS') by [Santana] at [Central Booking]." (*Id.* ¶ 1.) Plaintiff also explained that "[t]his case also arises from the negligent, grossly negligent, deliberately indifferent, and or intentional conduct and/or omissions of [Okeke and Washington]

---

[1] The Court recites the facts as necessary to describe the claims against Zanel Santana and as necessary to resolve the pending Motion, given that Plaintiff has settled her claims as to the other Defendants.

that [were] the proximate cause of damages sustained by Plaintiff as a result of her constitutional

right to be protected from excessive force, foreseeable harm, and violations of Plaintiff's right to

due process." (*Id.* ¶ 2.)

In February 2019, Plaintiff was arrested and detained at Central Booking. (*Id.* ¶ 18.) She

"became notoriously known by Central Booking correctional officers and staff as a persistent

advocate and activist for transgender inmate rights." (*Id.* ¶ 19.) In June 2019, Plaintiff was

promised recreational time by a sergeant, but then other officers refused her requests for

recreational time. (*Id.* ¶¶ 21–26.) In so refusing her requests, these other officers used slurs and

insults related to Plaintiff's sexuality. (*Id.* ¶¶ 22, 25.)

Then, Officer Glaudia Vincent "attempted to lock [Plaintiff] into her cell for the evening,

but [Plaintiff] refused and insisted that she" be permitted to have recreational time, as she was

promised. (*Id.* ¶ 26.) Vincent called for Santana, and Plaintiff "went into a nearby sally port, sat

on the floor in the middle of the room in protest, and stated to Defendant Washington that she was

not moving and [] requested that a supervisor respond to the situation." (*Id.* ¶ 29.)

"Santana arrived on scene and stood behind [Plaintiff] and shouted to Defendant

Washington, 'Mace this fucking dick sucker!'" (*Id.* ¶ 31.) Santana "then put on his tactical gloves

and acted as if he was going to strike [Plaintiff]" and "began pushing [Plaintiff] in her back with

his knee as she sat on the floor." (*Id.* ¶ 32.) Santana then placed Plaintiff in a chokehold while

she was still seated on the floor. (*Id.* ¶ 36.) He "simultaneously took his left arm and clamped his

right arm even more tightly around [Plaintiff's] neck, and he placed his left hand on the back of

[her] head for additional leverage and torque, in an attempt to cause [her] as much pain as

possible." (*Id.*) Plaintiff alleges that the chokehold "was and continues to be expressly forbidden

according to DPSCS use of force training directives." (*Id.* ¶ 37.) Santana "lifted [Plaintiff] off the

ground while continuing to unlawfully choke her, and he began to push/carry her out of the sally port and into a common area." (*Id.* ¶ 38.) Santana "choked [Plaintiff] so violently that she could not breath and she was rendered unconscious within a matter of seconds." (*Id.* ¶ 40.) However, Santana "did not care" and "continued to choke [her] tightly around her neck while carrying her limp body across the common room floor by her neck for several more feet." (*Id.* ¶ 41.) Then, "without any lawful or justifiable purpose, Defendant Santana intentionally dropped [Plaintiff's] lifeless body" and her "head fell from Defendant Santana's waist-level down to the concrete floor directly onto her face." (*Id.* ¶ 44.) The Third Amended Complaint includes screenshots reflecting these events, taken from security footage. (*See generally id.*)

No officers sought medical treatment for Plaintiff for more than ten minutes following these events, despite the fact that Plaintiff had been rendered unconscious and that she "had sustained a serious open head wound that was visibly bruised and swollen." (*Id.* ¶ 46.) She was later transported to the medical unit for treatment and, due to the seriousness of the injuries, she was transferred to the Intensive Care Unit at Johns Hopkins Hospital. (*Id.* ¶¶ 48, 49.) There, she was "diagnosed with a fractured left orbital bone, a fracture to her left optic nerve canal, fractures to her left anterior skull base, multiple sinus fractures, severe bruising to her left forehead, pneumocephalus (air pockets in the intracranial space created by blunt force trauma), and internal bleeding behind her left eye." (*Id.* ¶ 50.) Despite directives from Johns Hopkins for follow up medical appointments, "the staff refused to allow [Plaintiff] to attend all her medical appointments in retaliation for her complaints of being assaulted." (*Id.* ¶ 53.)

Plaintiff further alleges that "after her assault, Defendants Santana, Washington, and Okeke conspired together to falsify their use-of-force reports that memorialized their encounter with Amber in an attempt to provide a cover-up for one-another of their unlawful and/or criminal

conduct throughout any potential investigation, in direct violation of DPSCS policy." (*Id.* ¶ 57.) She alleges that the provision of false information has resulted in her being "made vulnerable to this very day to future harassment and abuse by other correction officers throughout the DPSCS system." (*Id.* ¶ 61.)

Santana, Washington, and Okeke were criminally indicted on March 29, 2021 by a Baltimore City grand jury for their conduct. (*Id.* ¶ 67.) "Santana was charged with felony First Degree Assault, and two counts of Misconduct in Office" and "Washington and Okeke were both charged with two counts of Misconduct in Office." (*Id.*) On March 22, 2022, Santana was found guilty of Second Degree Assault and two counts of Misconduct in Office, and Washington and Okeke were found not guilty. (*Id.* ¶ 68.)

Plaintiff brought several claims against Santana. As is relevant for the pending Motion, the claims include: a 42 U.S.C. § 1983 claim premised on a violation of Plaintiff's Fourteenth Amendment rights based upon excessive force (Count 1); violation of Articles 24 and 26 of the Maryland Declaration of Rights (Count 4); gross negligence (Count 6); and intentional infliction of emotional distress (Count 9). (*Id.* ¶¶ 70–74, 82–96, 104–109, 121–125.)

Santana has not participated in this litigation, and the Clerk issued an Entry of Default and Notice of Default in July 2023. (ECF Nos. 83, 84.)

On December 9, 2024, Plaintiff filed a Motion for Default Judgment. (ECF No. 115.) The Court denied that Motion without prejudice, explaining that the Motion was woefully deficient, given that it provided no analysis and essentially no citation to authority. (ECF No. 121.) The Court permitted Plaintiff an opportunity to file a renewed motion. (*Id.*)

Plaintiff has renewed her Motion for Default Judgment. (ECF No. 124.) In it, she seeks default judgment on Counts 1, 4, 6, and 9 of the Third Amended Complaint. (*Id.*) She seeks

4

compensatory damages of $400,000 for Count 1, $100,000 for Count 4, $100,000 for Count 6, and $100,000 for Count 9. (*Id.* at 15–16.) She also seeks punitive damages for Counts 1 and 9 of $500,000. (*Id.*)

## II.    Legal Standard

After entry of default under Federal Rule of Civil Procedure 55(a), a party may move for default judgment. Entry of default against a defendant does not alone entitle a plaintiff to judgment as of right:

> "The defendant, by [its] default, admits the plaintiff's well-pleaded allegations of fact . . . [but] is not held . . . to admit conclusions of law. In short, . . . a default is not treated as an absolute confession by the defendant of [its] liability and of the plaintiff's right to recover." The court must . . . determine whether the [conceded facts] support the relief sought in [the] action.

*Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). "In the Fourth Circuit, district courts analyzing default judgments have applied the standards articulated by the United States Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), to determine whether allegations within the complaint are 'well-pleaded.'" *Vasquez-Padilla v. Medco Props., LLC*, Civ. No. PX-16-3740, 2017 WL 4747063, at *2 (D. Md. Oct. 20, 2017) (collecting cases).

While a plaintiff's factual allegations are deemed admitted, allegations relating to the amount of damages are not deemed admitted based on a defendant's failure to respond to a suit. *Meade Communities, LLC v. Whitaker*, Civ. No. ELH-22-2381, 2023 WL 2914787, at *2 (D. Md. Apr. 11, 2023). Instead:

> the Court must make an independent determination regarding allegations as to damages. In so doing, the court may conduct an evidentiary hearing. However, the court may also make a determination of damages without a hearing, so long as there is an adequate evidentiary basis in the record to support an award of the requested

damages.

*Id.* at *3.

## III.   Analysis

For the reasons that follow, default judgment will be granted with respect to Counts 1, 6, and 9.  Default judgment will be granted in part with respect to Count 4.  Plaintiff will be directed to provide supplemental briefing.

### A. Counts 1 and 4

Plaintiff brought a 42 U.S.C. § 1983 claim premised on Santana's violation of Plaintiff's Fourteenth Amendment rights based upon excessive force (Count 1) and a claim premised on Santana's violation of Articles 24 and 26 of the Maryland Declaration of Rights (Count 4).

With respect to Plaintiff's § 1983 claim, to state claim, a plaintiff must allege that (1) a person acting under color of state law committed the conduct complained of, and (2) the conduct deprived the plaintiff of rights secured by the laws of the United States or the Constitution.  *Temkin v. Frederick Cnty. Comm'rs*, 945 F.2d 716, 719 (4th Cir. 1991).  Plaintiff plainly sufficiently alleges that Santana acted under color of state law.  Thus, the Court examines whether she sufficiently alleges that Santana deprived of her of a constitutional right.  An excessive force claim by a pretrial detainee, as Plaintiff was here, is governed by the Fourteenth Amendment.  And, in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), the Supreme Court held that, unlike the standard applied to post-conviction detainees' excessive force claims under the Eighth Amendment, the standard for pretrial detainees' excessive force claims under the Fourteenth Amendment includes no subjective component.  Thus, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable."  *Id.* at 396–97.  "Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the

6

plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.* at 397.

Here, Plaintiff sufficiently alleges that Santana applied excessive force in violation of the Fourteenth Amendment. Although Plaintiff was apparently not complying with a directive from an officer, the force used was grossly disproportional to her actions. Plaintiff did not present any danger to any officers, as she was apparently simply sitting down in protest. Santana did not make any effort to limit the amount of force he applied, as he essentially immediately applied a chokehold, rendered Plaintiff unconscious, and then dropped Plaintiff from waist height onto a concrete floor. The injuries Plaintiff sustained were severe, requiring her to visit the intensive care unit of a hospital. In short, Santana's actions were objectively unreasonable in view of the amount of force used and Plaintiff's resulting injury, as compared to Plaintiff's minor infraction. Thus, the Court finds that default judgment is appropriate with respect to Count 1, Plaintiff's Fourteenth Amendment claim.

Further, Plaintiff seeks default judgment with respect to Count 4, in which Plaintiff brought a claim pursuant to Articles 24 and 26 of the Maryland Declaration of Rights. Given the foregoing discussion regarding the Fourteenth Amendment, Plaintiff will be granted default judgment with respect to her Article 24 claim. *Dent v. Montgomery Cnty. Police Dep't*, 745 F. Supp. 2d 648, 661 (D. Md. 2010) (explaining that Article 24 of the Maryland Declaration of Rights is construed *in pari materia* with the Fourteenth Amendment). However, Article 26 is construed *in pari materia* with the Fourth Amendment. *Id.* Plaintiff provides no explanation as to why she has sufficiently made out a claim under the Fourth Amendment, and in any event, "[i]t is well-settled that the Fourth Amendment does not govern claims brought by pretrial detainees." *Rodwell v. Wicomico*

*Cnty., Maryland*, Civ. No. DKC-22-3014, 2024 WL 1178202, at *8 (D. Md. Mar. 19, 2024).  Thus, the request for default judgment as to Count 4 will be granted as to the Article 24 claim and denied as to the Article 26 claim.

### B.  Count 6

Plaintiff also seeks default judgment on Count 6, her gross negligence claim.  Under Maryland law, gross negligence is:

> an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them.  Stated conversely, a wrongdoer is guilty of gross negligence or acts wantonly and willfully only when he inflicts injury intentionally or is so utterly indifferent to the rights of others that he acts as if such rights did not exist.

*Barbre v. Pope*, 935 A.2d 699, 717 (Md. 2007) (citation omitted).  For largely the same reasons described in the foregoing section, the Court concludes that Plaintiff has also sufficiently demonstrated that Santana acted with gross negligence as to warrant default judgment with respect to this count.  Plaintiff sufficiently alleges that Santana was, at a minimum, so indifferent to her rights that he acted if such rights did not exist.  Thus, the Court will grant default judgment as to this count.

### C.  Count 9

Finally, Plaintiff seeks default judgment on Count 9, her intentional infliction of emotional distress ("IIED") claim.  "When a plaintiff alleges that a defendant, or agents of a defendant, committed IIED under Maryland law, the plaintiff must demonstrate that: (1) the conduct was intentional or reckless; (2) the conduct was extreme and outrageous; (3) there was a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress was severe." *Alston v. Balt. Gas & Elec. Co.*, Civ. No. ELH-22-1061, 2023 WL 1472020, at *21 (D. Md. Feb. 1, 2023) (citing *Manikhi v. Mass Transit Admin.*, 758 A.2d 95, 113 (Md. 2000)).

8

With respect to the second element, this Court recently explained that:

[f]or alleged conduct to be truly "outrageous" it must "go beyond all possible bounds of decency" and "be regarded as atrocious, and utterly intolerable in a civilized community." *Batson v. Shiflett*, 602 A.2d 1191, 1216 (Md. 1992) (quotations omitted). To determine whether conduct is truly outrageous, the Court considers "the context in which the conduct occurred, the personality of the plaintiff and her susceptibility to emotional distress, and the relationship between the defendant and plaintiff." *Brengle v. Greenbelt Homes, Inc.*, 804 F. Supp. 2d 447, 454 (D. Md. 2011). The conduct must go beyond the "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" that are simply part of life and that the high bar of IIED is intended to screen out. *See Haines v. Vogel*, 249 A.3d 151, 162–63 (Md. Ct. Spec. App. 2021) (quotation omitted). There must be "a unique relationship" between the parties where the defendant, has a position of influence and knowledge and uses that position outrageously. *See id.* at 164. Police officers have such an authority and can been held liable for "extreme abuse" of their position. *See McPherson v. Balt. Police Dep't*, 494 F.Supp.3d 269, 286 (D. Md. 2020) (upholding a claim against two police officers who were "alleged to have used their authority as officers to falsify evidence of Plaintiffs' participation in a homicide, resulting in decades of wrongful imprisonment and the attendant emotional distress").

*Hughes v. M&T Bank*, Civ. No. JKB-23-1993, 2023 WL 8282043, at *6 (D. Md. Nov. 30, 2023).

Plaintiff has sufficiently established an IIED claim as to warrant default judgment, despite there being a high bar to establishing such a claim. She sufficiently alleges that the conduct was reckless or intentional. She sufficiently establishes that the conduct was extreme and outrageous, particularly in view of the sheer amount of force Santana used, his attempts to cover up the use of force, and Santana's authority over Plaintiff. *See, e.g.*, *Washington v. Maynard*, Civ. No. GLR-13-3767, 2016 WL 865359, at *11 (D. Md. Mar. 7, 2016) ("[T]he extreme and outrageous character of the defendant's conduct may arise from his abuse of a position, or relation with another person, which gives him actual or apparent authority over him, or power to affect his interests." (citation omitted)); *McPherson v. Balt. Police Dep't*, 494 F. Supp. 3d 269, 286 (D. Md. 2020) ("[Defendants'] position as law enforcement officers enhances the alleged extreme and outrageous

9

character of their conduct"). Further, she sufficiently alleges a causal connection between Santana's assault and her emotional distress, and that her distress was severe.

### D. Damages

Plaintiff seeks compensatory and punitive damages. For the reasons that follow, Plaintiff will be directed to provide supplemental briefing.

#### 1. Compensatory Damages

Plaintiff seeks the following compensatory damages: $400,000 for Count 1, $100,000 for Count 4, $100,000 for Count 6, and $100,000 for Count 9. (ECF No. 124 at 15–16.) In her Motion for Default Judgment, Plaintiff explains that she "suffers from significant mental distress and significant pain and suffering, including but not limited to loss of sleep, anxiety, depression, and post-traumatic stress disorder, because of Defendant Santana's attack." (*Id.* at 3; *see also id.* at 15 ("Plaintiff has sustained significant mental and physical pain and suffering.")) Thus, the Court understands Plaintiff to be seeking compensatory damages that are non-pecuniary.[2]

"In the case of a default judgment, the plaintiff's factual allegations, other than those pertaining to damages, are deemed admitted" and "[i]f the court is satisfied that liability has been established, it must then determine the appropriate amount of damages." *Meade Communities, LLC v. Whitaker*, Civ. No. ELH-22-2381, 2023 WL 2914787, at *2 (D. Md. Apr. 11, 2023). The Court makes an "independent determination regarding allegations as to damages." *Id.* To make such determination, the Court may conduct a hearing. Fed. R. Civ. Pr. 55(2)(b) ("The court may

---

[2] The Court recognizes that in her Third Amended Complaint, Plaintiff explained that "[a]s a direct and proximate result of the aforesaid conduct, actions, and inactions of Defendant Santana and that [sic] stated elsewhere herein, [Plaintiff] was caused to suffer and continues to suffer" physical and emotional injuries, as well as "economic damages including, but not limited to, past and future medical bills and expenses, future lost time and wages from work, future lost earning capacity and unnecessary attorneys' fees, all to the great detriment of Plaintiff." (*See* ECF No. 72 ¶¶ 74, 96, 109.) However, Plaintiff makes no reference in the pending Motion to economic damages such as medical expenses, lost time or wages, or earning capacity, nor does she present any evidence of such economic damages.

conduct hearings . . . when, to enter or effectuate judgment, it needs to . . . determine the amount of damages."). However, the Court is not required to conduct a hearing, and may instead rely on affidavits and documentary evidence to determine the appropriate measure of damages. *Parrish v. Leithman*, 733 F. Supp. 3d 371, 374 (D. Md. 2024).

Plaintiff "requests that the Court convene a hearing to permit Plaintiff the opportunity to testify as to the nature of her damages in this case." (ECF No. 124 at 15.) In terms of evidence reflecting her damages, she presents only hospital records from her visit to Johns Hopkins Hospital, which detail the extent of her injuries the day they occurred. (*See* ECF No. 124-4; ECF No. 124-7 at 68–91.) These records do not evidence any ongoing physical or emotional harm.

The Court will not hold a hearing, but rather will direct Plaintiff to file supplemental briefing with appropriate evidence detailing her entitlement to the requested damages. As noted above, such evidence may be in the form of documentary evidence and affidavits, or whatever other evidence Plaintiff wishes to present. Plaintiff is reminded that "although specifically recognizing that a plaintiff's testimony can provide sufficient evidence to support an emotional distress award, [courts] have required a plaintiff to reasonably and sufficiently explain the circumstances of the injury and not resort to mere conclusory statements." *Sloane v. Equifax Info. Servs., LLC*, 510 F.3d 495, 503 (4th Cir. 2007).

In the briefing currently before the Court, Plaintiff does not cite to any authority reflecting her entitlement to the amount of damages she seeks. Therefore, in the supplemental briefing, Plaintiff must also provide citation to authority supporting the amount of her requested damages.

Further, as noted above, Plaintiff seeks $400,000 for Count 1, $100,000 for Count 4, $100,000 for Count 6, and $100,000 for Count 9. (ECF No. 124 at 15–16.) This is not appropriate. Although the Court finds that she has sufficiently established each of the four above-described

11

causes of action as to warrant the entry of default judgment, she may not recover separate compensatory damages on each, given that her alleged injury is the same. *See Hartford Fin. Servs. Grp., Inc. v. Carl J. Meil, Jr., Inc.*, Civ. No. WDQ-10-2720, 2011 WL 1743177, at *6 (D. Md. May 5, 2011) ("Under what is known as the 'one wrong, one recovery rule,' a party may not recover twice for one injury, even if the party asserts multiple, consistent theories of recovery." (*citing Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 333 (1980))). Thus, in her briefing, Plaintiff must revise her compensatory damages request to account for the fact that she may not recover multiple times for the same injury.

### 2. Punitive Damages

Plaintiff alleges in her Third Amended Complaint that she is "entitled to punitive damages against Defendant Santana in that his actions were undertaken intentionally, knowingly, maliciously, willfully and/or with a reckless or wanton disregard of the effect on [her]." (ECF No. 72 ¶ 125.) In the pending Motion, she seeks $500,000 in punitive damages with respect to Counts 1 and 9. (ECF No. 124 at 16.)

As with her request for compensatory damages, Plaintiff will be directed to provide supplemental briefing with respect to her request for punitive damages, which must include citation to relevant authority. The briefing currently before the Court does not include citation to authority establishing any entitlement to punitive damages.

### 3. Briefing

As noted above, Plaintiff will be directed to provide supplemental briefing with respect to her request for damages. Plaintiffs must serve a copy of this Memorandum and accompanying Order upon Santana, so as to allow him an opportunity to provide relevant briefing if he so wishes. The Court presumes that, because Plaintiff has sued Santana in his individual capacity, and because

she alleges that Santana acted with gross negligence, *see* Md. Code Ann., Cts. & Jud. Proc. § 5-522(b), that she will not seek damages against the State of Maryland or any of its agencies. However, counsel for the State of Maryland will also be directed to file briefing regarding its position regarding the payment of damages.

**IV.   Conclusion**

For the foregoing reasons, Plaintiff's Motion for Default Judgment will be largely granted. It will be denied only as to Plaintiff's request for default judgment with respect to her Article 26 of the Maryland Declaration of Rights claim. Plaintiff will be directed to provide further briefing relating to damages, as described above. Santana will also be directed to provide briefing relating to damages.

DATED this 2 7 day of February, 2025.

BY THE COURT:

James K. Bredar
United States District Judge

13